Filed 4/29/21  P. v. Bowler CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JEFFREY BOWLER,<br><br>　　　Defendant and Appellant. | H047543<br>(Santa Cruz County<br>Super. Ct. No. 17CR05636) |

Defendant Jeffrey Bowler pleaded no contest to evading a peace officer with willful disregard for safety (Veh. Code, § 2800.2), child abuse (Pen. Code, § 273a, subd. (a)),[1] misdemeanor reckless driving (Veh. Code, § 23103, subd. (a)), and an infraction for driving at a speed greater than 100 miles per hour (Veh. Code, § 22348, subd. (b)).  Defendant also admitted that he had a prior strike conviction.  (§ 667, subds. (b)-(i).)  At the sentencing hearing, the trial court denied defendant's *Romero*[2] motion and sentenced him to a total term of four years in prison.  On appeal, defendant argues that the trial court abused its discretion by denying his *Romero* motion and that the trial court erroneously imposed fines and fees without first determining his ability to pay them under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).  For reasons that we explain, we find no merit in defendant's arguments and affirm the judgment.

---

[1] Further unspecified statutory references are to the Penal Code.

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

# I. BACKGROUND

1. ***The Offenses***[3]

California Highway Patrol Officer Fred Smith was on duty on September 2, 2017 and was using his radar gun to monitor the speed of passing motorists on Highway 1. At around 8:30 p.m. that evening, Officer Smith saw a silver Toyota RAV4 that he estimated was traveling at over 100 miles per hour. As the RAV4 approached, Officer Smith used his radar gun, which showed that the car was driving at 110 miles per hour.

Officer Smith started his car and tried to get behind the RAV4. Officer Smith estimated that the RAV4 continued at a speed of over 100 miles per hour until it took an exit toward San Andreas Road/Larkin Valley. Before the RAV4 exited the highway, it passed vehicles in both lanes and went from the left lane all the way over to the exit lane. Officer Smith was familiar with the exit, which had a "tight hairpin type turn." Officer Smith believed that there was a "good probability" that there would be a collision because of the tightness of the turn and the RAV4's speed. Officer Smith exited the highway and saw the RAV4 go sideways into the dirt shoulder.

The RAV4 continued onto San Andreas Road, a single lane road that was divided by double yellow lines. The RAV4 passed cars by driving over the double yellow lines, and at least one car had to "dive to the shoulder" to avoid a head-on collision. Officer Smith activated his red and blue flashing lights to try to get cars out of the way so he could get behind the RAV4. Officer Smith estimated that the RAV4 reached speeds of at least 80 miles per hour while driving on the residential street until it was slowed by traffic. The RAV 4 started to tailgate another car, and, at some point, the RAV4 turned its lights off.

---

[3] We derive our recitation of the facts from the preliminary hearing transcript. The parties stipulated that the preliminary hearing transcript would serve as the factual basis for defendant's plea.

The RAV4 then abruptly turned into a private gated community. Officer Smith estimated that the RAV4 reached a speed of up to 60 miles per hour until it was stopped at a stop sign and blocked in by another car. Officer Smith made contact with the driver of the car, who he identified as defendant. Defendant had his then four-month-old baby in a car seat in the back of the car. Defendant cooperated with Officer Smith after he was stopped, and he said that he was on parole and did not want to get a ticket. According to Officer Smith, the maximum speed limit on Highway 1 is 65 miles per hour, the speed limit on San Andreas Road is 45 miles per hour, and the speed limit in a residential area like the gated community where defendant was stopped is 25 miles per hour.

2. *The Information*

On April 11, 2018, defendant was charged by information with evading a peace officer with willful disregard for safety (Veh. Code, § 2800.2; count 1), child abuse (§ 273a, subd. (a); count 2), misdemeanor reckless driving (Veh. Code, § 23103, subd. (a); count 3), and an infraction for speeding greater than 100 miles per hour (Veh. Code, § 22348, subd. (b); count 4). The information also alleged that defendant had two prior prison term commitments (§ 667.5, subd. (b)) and one prior strike conviction (§ 667, subds. (b)-(i)).

3. *The Plea and Change of Plea*

On April 12, 2018, defendant pleaded not guilty to all the counts and denied all the allegations.

On March 13, 2019, defendant changed his plea and entered an open plea of no contest to all four counts and admitted the allegations that he had a prior strike conviction and two prior prison term commitments.

4. *The* **Romero** *Motion and Related Materials*

On March 12, 2018, defendant filed a motion requesting that the trial court exercise its discretion under section 1385 and *Romero*, *supra*, 13 Cal.4th 497 to strike his

3

prior strike conviction.[4]  Defendant argued that his prior strike stemmed from a single criminal case in which he was convicted of multiple counts of robbery, and the offenses were nearly 10 years old.  Defendant also argued that the current child abuse offense did not involve violence, he took reasonable steps to ensure his child's safety, and he took responsibility for his behavior after he was arrested.

The prosecutor opposed defendant's *Romero* motion, arguing that the prior strike was not remote in time and that defendant did not remain crime-free while on parole and had been previously arrested for domestic violence.  The prosecutor characterized defendant's prior strike as a "crime of violence" and noted that defendant was "directly responsible for the firearm use in all the robberies, and acted with another who physically attacked other individuals."  The prosecutor also argued that the current offense placed a "helpless, fragile, newborn" in "a situation that could have caused great bodily injury or death," and his reckless driving put other drivers at great risk.

Defendant's parole officer testified at the March 15, 2018 preliminary hearing.  According to the parole officer, defendant had been on parole since June 2015.  The parole officer was aware of two instances during the course of defendant's parole where his parole conditions were modified.  One modification was made after defendant was arrested on a domestic violence charge.  After his arrest, defendant was ordered to attend domestic violence counseling and was also ordered not to have contact with the victim without prior approval.  Later, defendant's parole officer received a phone call from defendant's girlfriend, who complained that she had asked defendant to leave her alone

---

[4] The *Romero* motion was filed before the preliminary hearing and before the information was filed.  In the same motion, defendant also argued that the evidence was insufficient to support a holding order on the child abuse offense (§ 273a, subd. (a)) and that the trial court should reduce the child abuse offense to a misdemeanor under section 17, subdivision (b).  At the preliminary hearing, the trial court issued a holding order on the child abuse offense, declined to reduce the child abuse offense to a misdemeanor, and reserved its ruling on the *Romero* motion.

4

but he had refused to do so.  Subsequently, defendant's parole officer told defendant that he "need[ed] to leave" and "need[ed] to get out."  Defendant was otherwise compliant with his parole conditions.

On May 6, 2019, the Santa Cruz County Probation Department prepared a probation report.  According to the report, defendant was convicted of misdemeanor drunk in public (§ 647, subd. (f)) in January 2007, misdemeanor petty theft (§ 488) in March 2008, and misdemeanor indecent exposure (§ 314, subd. 1) in October 2008.[5]

The probation report also summarized the robbery offenses that resulted in defendant's prior strike conviction.  The first series of robberies took place on July 16, 2007, when defendant, a codefendant, and a third unidentified suspect approached two victims.  The codefendant asked one victim to empty his pockets and grabbed the victim's cell phone.  Defendant demanded the second victim's personal belongings, and when the second victim refused, defendant punched him in the face.  Defendant and his codefendant then continued to kick and punch the second victim until he was unconscious.  Later that same evening, defendant and his codefendant approached a third victim and demanded his skateboard, cell phone, and wallet.  The third victim was assaulted, and he woke up at his father's house and could not recall what had happened.

The second series of robberies took place around July 18, 2007, when defendant and his codefendant were involved in several robberies near the Santa Cruz Beach Boardwalk, Santa Cruz Wharf, and downtown Santa Cruz.  Some of the robberies involved defendant being armed with an airsoft gun.  At the time, defendant admitted to police that he had participated in the robberies, and he explained that he had been homeless and had been drinking when he committed the offenses.  The information that

---

[5] The probation report states that defendant was convicted of violating "PC 314.1." No such section exists.  However, section 314, subdivision 1 criminalizes indecent exposure.

was filed by the district attorney's office named 15 victims. Two victims reported that defendant and his codefendant approached them when they were sitting on a bench, and defendant lifted his shirt to reveal a black handgun. The codefendant punched one of the victims in the face and dragged him off the bench. When the other victim attempted to intervene, defendant punched him twice in the face.

The probation report also disclosed that on August 17, 2017, defendant was arrested for a violation of section 273.5 after he had an argument with his girlfriend and grabbed her arm, causing bruising.

According to the probation report, defendant was discharged from parole on March 26, 2018. On October 27, 2018, defendant was arrested and booked into county jail for public intoxication. Defendant was later released. In a statement, defendant said that he got drunk at a party and attempted to leave but was stopped by other guests. In his booking photo, defendant's left eye was swollen and bruised, and he had cuts on his nose and mouth.

In an interview with the probation officer, defendant explained that he committed the robbery offenses because he was homeless and needed to make money to get his belongings back from an impounded car. Defendant placed some of the blame on his codefendant and minimized some of his own conduct, but he also took responsibility for the offenses. Defendant, who was 31 years old, stated that he had been in prison from the time he was 19 years old until he was 27 years old. After defendant was released from prison, he was traumatized and was unable to walk down the street without feeling overwhelmed. Defendant did not want to go back to prison again. While incarcerated, defendant reflected on his decisions and realized that he needed to make serious changes to his life. Defendant was intoxicated when he committed the robberies that led to his prison commitment, but he now attended Alcoholics Anonymous and had a sponsor.

The probation report further summarized some of defendant's education and work history. Defendant attended high school but left five credits short of graduating. Defendant completed his GED while in prison and obtained certificates in computer programming and OSHA. After he was released, he obtained a Class A license at the Truck Driver Institute in Watsonville, but he was unable to find truck driving work due to his current charges. At the time the probation report was prepared, defendant was working approximately 25 to 40 hours a week at a Safeway store, and he had prior experience working at New Leaf, Goodwill, Coffeetopia, and Threshold. Defendant earned up to $400 a week, with $240 going to his girlfriend, with whom he shared his two-year-old son.

On May 10, 2019, defendant submitted "sentencing materials" to the court that included an apology letter from defendant, several support letters, information about defendant's participation in Alcoholics Anonymous, and intake materials from a community program.

5. ***The Hearing on the* Romero *Motion***

On June 14, 2019, the trial court held a hearing on the *Romero* motion. The trial court stated that it had reviewed the original *Romero* motion filed on March 12, 2018, the sentencing materials submitted by defendant, the probation report, and the prosecutor's opposition to the *Romero* motion.

Defendant testified at the hearing on his own behalf. He described his prior robbery offenses as "bad decisions," and he took responsibility for his actions. While he was on parole, he did not have any formal violations. He had enrolled in anger management classes after having a mutual physical fight with his girlfriend, and he attended approximately 13 or 15 classes. From the classes, defendant learned tools to help him deal with volatile situations. Defendant expressed "total regret" for his current offenses. He recognized that it was dangerous to speed, and he knew that he had placed

7

his son at risk. After he was released from prison, he strived to obtain employment, and he was able to hold multiple jobs. Defendant had recently earned a 30-day chip from Alcoholics Anonymous. At the time of the hearing, he had been completely sober for 18 days. According to defendant, the most important thing to him was his son.

Defense counsel argued that the trial court should strike defendant's prior strike conviction because the offense occurred 12 years ago, and defendant made positive strides after he was released from prison. Defense counsel further argued that defendant "did really well on parole" aside from the actions underlying the current charges. During defense counsel's argument, the trial court acknowledged that defendant seemed "remorseful because of what the consequences are going to be for him" for his current charges, but the trial court did not "hear anything [from defendant] that acknowledged how dangerous [his] behavior [was]." The trial court also commented that defendant's decision to flee from the police was "so dangerous" and brought "so many dangers to other people." Subsequently, the prosecutor argued that defendant's current offenses were serious and he "not only put other people's lives in danger on the road, but he put his own son's life in danger when speeding in excessive amounts of speed [and] trying to evade an officer." The prosecutor insisted that defendant's conduct reflected that "his criminality may continue."

After considering defendant's testimony and the arguments from the defense counsel and the prosecutor, the trial court denied the *Romero* motion. The trial court stated that it believed that the "punishment in this case is way too harsh," but a "judge's individual opinion that a particular sentence is too harsh is not an adequate basis to dismiss a strike prior." The trial court noted that defendant's prior strike arose from crimes that were "just as bad as they can be," and although he did not "beat some of the [robbery] victims, but [defendant's] co-defendants did," "[defendant was] the man with

8

the gun." The trial court also observed that defendant's time in prison appeared to have a positive effect on him, as he completed his GED and now had a job.

The trial court, however, also made the following observation: "The problem is [defendant] was on parole when he committed these new offenses and he was arrested for something else, although not prosecuted, while on parole. I couldn't find a single case that found someone to still be on parole and find that to be an appropriate exercise of discretion to strike a strike. [¶] I just can't intellectually arrive at the conclusion. Emotionally, I would like to arrive at that conclusion, intellectually it is not supported by case law."

6. *Sentencing*

On June 14, 2019, the trial court sentenced defendant to two years for child abuse (§ 273a, subd. (a); count 2), doubled due to his prior strike, for a total of four years. The trial court also sentenced defendant to a concurrent term of 16 months for evading a peace officer with willful disregard for safety (Veh. Code, § 2800.2; count 1) and a concurrent term of six months for misdemeanor reckless driving (Veh. Code, § 23103, subd. (a); count 3). The trial court struck the two prior prison term commitments (§ 667.5, subd. (b)) under section 1385. Finally, the trial court imposed a $150 fine for the infraction for speeding greater than 100 miles per hour (Veh. Code, § 22348, subd. (b); count 4).

The trial court also imposed various fines and fees, including a $1,200 restitution fine under section 1202.4, subdivision (b), a $1,200 parole revocation fine under section 1202.45 that was imposed but stayed, a $80 court operations assessment (§ 1465.8), and a $60 court facilities assessment (Gov. Code, § 70373).

Defendant appealed and requested a certificate of probable cause, which the trial court granted.

DISCUSSION

1. ***Denial of the* Romero *Motion***

Defendant argues that the trial court erred when it denied his *Romero* motion because it misunderstood the scope of its discretion. As we explain, we find no merit in defendant's contention.

A. ***General Legal Principles and Standard of Review***

Section 1385 authorizes a trial court to strike prior strike convictions "in furtherance of justice." (*Romero*, *supra*, 13 Cal.4th at p. 504.) That discretion, however, is "limited." (*Id.* at p. 530.) "[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders." (*Id.* at p. 528.) "To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he [or she] actually fell outside the Three Strikes scheme." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

In exercising its discretion, the trial court must " ' "consider[] both . . . the constitutional rights of the defendant, and the interests of society represented by the People . . . ." ' " (*Romero*, *supra*, 13 Cal.4th at p. 530, italics omitted.) The trial court must accord "preponderant weight . . . to factors intrinsic to the [Three Strikes] scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) "[N]o weight whatsoever may be given to factors extrinsic to the scheme, such as the mere desire to ease court congestion or, a fortiori, bare antipathy to the consequences for

any given defendant." (*Ibid.*) Ultimately, the trial court must determine whether "the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*Ibid.*)

We review a trial court's discretionary sentencing choices, including its refusal to strike a prior strike conviction, for abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 375.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376-377.)

"[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) An abuse of discretion also occurs where the trial court "strikes a sentencing allegation[] solely 'to accommodate judicial convenience or because of court congestion,' " or "simply because a defendant pleads guilty." (*Romero*, *supra*, 13 Cal.4th at p. 531.)

11

On the other hand, "[w]here the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he [or she] squarely falls once he [or she] commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary. Of course, in such an extraordinary case—where the relevant factors . . . manifestly support the striking of a prior conviction and no reasonable minds could differ—the failure to strike would constitute an abuse of discretion." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

### B. Analysis

On appeal, defendant argues that the trial court abused its discretion when it denied his *Romero* motion because it primarily based its decision on the fact that he committed the charged offenses when he was still on parole. Defendant argues that the fact that he was on parole did not automatically preclude the trial court from dismissing his prior strike. The Attorney General disagrees and argues that the trial court appropriately considered the fact that defendant was on parole when he committed his offenses, and the record does not reflect that the trial court was unaware of its discretion to strike defendant's prior strike.

Defendant's claim is primarily premised on the following statement made by the trial court during the hearing on the *Romero* motion: "The problem is [defendant] was on parole when he committed these new offenses and he was arrested for something else, although not prosecuted, while on parole. I couldn't find a single case that found

12

someone to still be on parole and find that to be an appropriate exercise of discretion to strike a strike. [¶] I just can't intellectually arrive at the conclusion. Emotionally, I would like to arrive at that conclusion, intellectually it is not supported by the case law."

"An abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) In this case, the record does not "*affirmatively* disclose[] that the trial court *misunderstood* the scope of its discretion." (*People v. Fuhrman* (1997) 16 Cal.4th 930, 944.) The trial court did not state that it believed that it *lacked* the discretion to strike defendant's prior strike. Rather, the trial court asserted that it believed that it was not an *appropriate exercise* of its discretion to strike the prior strike because, in part, the current offenses were committed when defendant was on parole. And as the trial court noted, although defendant did not have any formal parole violations, he was previously arrested while on parole for domestic violence-related charges. Defendant's recidivism does not support his claim that he is someone who falls "outside the [three strike's law] spirit, in whole or in part." (*Williams*, *supra*, 17 Cal.4th at p. 161.)

Furthermore, the record discloses that the trial court appropriately considered factors "such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects." (*Williams*, *supra*, 17 Cal.4th at p. 161.) The trial court noted that some factors weighed in favor of striking the prior strike conviction. For example, the trial court observed that defendant had made positive changes in his life after he was incarcerated, and he had obtained a job. The trial court, however, expressly stated that it considered that defendant's strike conviction arose from crimes that were "just as bad as they can be," and defendant acted as "the man with the gun" while his co-defendant "beat some of the victims." Defendant's prior robbery offenses involved

13

violence and multiple victims. Although his current offenses did not result in injuries to victims, the trial court considered that defendant's conduct was "dangerous," defendant put his infant son and other drivers at a serious risk of harm, and defendant had not adequately "acknowledged how dangerous [his] behavior [was]."

We acknowledge that when the trial court denied defendant's *Romero* motion, the trial court stated that it believed that the "punishment in this case is way too harsh," but a "judge's individual opinion that a particular sentence is too harsh is not an adequate basis to dismiss a strike prior." This statement reflected the trial court's understanding that "factors extrinsic to the [three strikes] scheme" should not be given weight, including a judge's "bare antipathy to the consequences for any given defendant." (*Williams*, *supra*, 17 Cal.4th at p. 161.)

Defendant argues that his prior offenses were committed when he was only 19 years old, and he acknowledged his role in the crimes, regretted his actions, and served his sentence and performed well on parole until his arrest in this current case. In other words, defendant claims that the trial court should have given greater weight to factors weighing in favor of granting the *Romero* motion. The trial court, however, reviewed the probation report, heard defendant's testimony, and entertained oral argument on the *Romero* motion. We may not substitute our judgment for that of the trial court. (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

Based on this record, we conclude that the trial court " 'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law' " when it denied the *Romero* motion, and no abuse of discretion occurred. (*Carmony*, *supra*, 33 Cal.4th at p. 378.) The circumstances presented by defendant were not " 'extraordinary' " (*ibid.*), and the trial court's ruling did not " 'fall[] outside the bounds of reason.' " (*Williams*, *supra*, 17 Cal.4th at p. 162.)

2. *Fines and Fees*

Next, defendant argues that the trial court erred when it imposed fines and fees without first determining his ability to pay under *Dueñas*, *supra*, 30 Cal.App.5th 1157. The trial court imposed a $1,200 restitution fine under section 1202.4, subdivision (b), imposed but stayed a $1,200 parole revocation fine under section 1202.45, and imposed a $80 court operations assessment (§ 1465.8) and a $60 court facilities assessment (Gov. Code, § 70373).

*A.* **Dueñas**

In *Dueñas*, the appellate court reversed an order imposing the court operations assessment (§ 1465.8) and the court facilities assessment (Gov. Code, § 70373) after concluding that it was "fundamentally unfair" and violated due process under the federal and California Constitutions to impose the assessments without a determination of the defendant's ability to pay. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1168.) The court also concluded that the execution of a restitution fine under section 1202.4 "must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas*, *supra*, at p. 1164.)

*B.* **Forfeiture**

Preliminarily, the Attorney General argues that defendant has forfeited his claim of error because his sentencing hearing took place on June 14, 2019, several months after *Duenas* was decided.

We agree with the Attorney General's analysis. In general, a defendant who fails to object to the imposition of fines, fees, and assessments at sentencing forfeits the right to challenge those fines, fees, and assessments on appeal. (See, e.g., *People v. Aguilar* (2015) 60 Cal.4th 862, 864; *People v. Trujillo* (2015) 60 Cal.4th 850, 853-854.) At the time of defendant's sentencing hearing, *Dueñas* had already been decided and there is no

15

reason why defendant could not have requested an ability-to-pay hearing based on *Dueñas*. Defendant's failure to raise this issue below forfeits his arguments on appeal.

Defendant's claim is also forfeited because the trial court in this case imposed a $1,200 restitution fine, well above the statutory minimum amount of $300 (§ 1202.4, subd. (b)(1)), but defendant did not request an ability-to-pay hearing even though he had the right to do so (§ 1202.4, subd. (d)). (See *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154.) Likewise, we determine that defendant's ability-to-pay claim regarding the $80 court operations assessment (§ 1465.8) and $60 court facilities assessment (Gov. Code, § 70373) was also forfeited by his failure to object to those assessments in the trial court. "[I]f [defendant] chose not to object to a [$1,200] restitution fine based on an inability to pay, he surely would not complain on similar grounds regarding an additional [$140] in fees." (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033.)

### C. *Ineffective Assistance of Counsel*

Alternatively, defendant argues that his trial counsel was ineffective for failing to raise the *Dueñas* issue during the sentencing hearing when the trial court imposed fines and fees.

To prevail on an ineffective assistance of counsel claim, a defendant must establish that trial counsel's performance was deficient and that defendant suffered prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) The deficient performance component of an ineffective assistance claim requires a showing that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. (*Id.* at p. 688.) Regarding prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* at p. 694.)

"It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only

16

if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Here, the record does not disclose why defense counsel chose not to object to the fines and fees during sentencing. Defense counsel was also not asked for a reason and failed to provide one. Moreover, this is not a situation where there could simply be no satisfactory explanation for defense counsel's failure to object. Defendant's ineffective assistance of counsel claim presupposes that *Dueñas* was correctly decided and an objection based on *Dueñas* would have been meritorious. The Courts of Appeal have reached conflicting conclusions regarding whether *Dueñas* was correctly decided, and the issue is currently before the California Supreme Court. (See, e.g., *People v. Kopp* (2019) 38 Cal.App.5th 47, 95 [agreeing with *Dueñas* that due process requires an ability-to-pay determination before imposition of court operations or court facilities assessments], review granted Nov. 13, 2019, S257844; *People v. Santos* (2019) 38 Cal.App.5th 923, 927 [applying "the principles articulated [in *Dueñas*]"]; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326, review granted Nov. 26, 2019, S258946 [concluding *Dueñas* improperly expanded the boundaries of due process because "the two strands of due process precedent" it relied on do not support its rule]; *People v. Adams* (2020) 44 Cal.App.5th 828, 831-832 [same]; *People v. Petri* (2020) 45 Cal.App.5th 82, 90-92 [same].) Pending the Supreme Court's decision, we continue to adhere to the position that *Dueñas* was incorrectly decided.

Accordingly, we find that defendant's claim of ineffective assistance of counsel, which is based on *Dueñas*, has no merit because "[c]ounsel does not render ineffective

17

assistance by failing to make motions or objections that counsel reasonably determines would be futile."  (*People v. Price* (1991) 1 Cal.4th 324, 387.)

### III.  DISPOSITION

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
DANNER, J.

*People v. Bowler*
**H047543**